19 F.3d 514
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee,
v.
Teddy Ray DYER; City of Green River, Wyoming; Glenn
Dodgion; Bryan Lee Butler; Amanda Colleen
Butler; Kayla Dawn Butler; Judy
Butler, Defendants,
and
Alice Ione Halstead Colley, as personal representative of
Jody Glenn Dodgion, deceased, and as administratrix of the
Estate of Jody Glenn Dodgion, deceased, and on behalf of
Alice Ione Halstead, as guardian and guardian-ad-litem for
Jordan Jody Halstead, Defendants-Appellants.
 No. 89-8074.
 United States Court of Appeals,
Tenth Circuit.
 March 15, 1994.
 
 1
 Daniel M. Hesse of Meyer and Williams, Jackson, WY, for defendants-appellants.
 
 
 2
 Frederick J. Harrison, Rawlins, WY, for plaintiff-appellee.
 
 
 3
 Before TACHA and HOLLOWAY, Circuit Judges, and BRETT,* District Judge.
 
 
 4
 BRETT, District Judge.
 
 
 5
 The plaintiff-appellee, State Farm Mutual Automobile Insurance Company (State Farm), brought this declaratory judgment action to determine its coverage obligations arising out of an automobile accident.[1] The accident was a single vehicle collision in which the driver Teddy Ray Dyer (Dyer) survived but the passenger Jody Glenn Dodgion was killed. After the defendant-appellant Alice Ione Halstead Colley (Colley)[2] brought a wrongful death action against Dyer in state court, State Farm initiated this action in federal district court. A motion to dismiss was denied and later, on cross motions for summary judgment, the district judge granted summary judgment for State Farm and denied the defendants' motion.[3]
 
 
 6
 * Dodgion was fatally injured on September 24, 1985, when the pickup he was riding in as a passenger struck a cable strung across the road at a municipal landfill in Green River, Wyoming. Dyer was driving the truck. At the time of the accident both Dyer and Dodgion were acting in the scope of their employment with Rock Springs Roofing Company, which was partially owned by Steven Boyd, the owner of the pickup truck.[4] The truck was covered by a State Farm liability insurance policy[5] issued to Steven and Jeanne Boyd (the Boyds), husband and wife.
 
 
 7
 It was in September 1987 that Colley brought the wrongful death action against Dyer and the City of Green River in her capacity as personal representative of Dodgion and as administratrix of his estate, and on behalf of Judy Butler, the mother of Jody Glenn Dodgion, deceased; Glenn Dodgion, father of Jody Glenn Dodgion, deceased; Bryan Lee Butler, half-brother of Jody Glenn Dodgion, deceased; Amanda Colleen Butler, half-sister of Jody Glenn Dodgion, deceased; and Kayla Dawn Butler, half-sister of Jody Glenn Dodgion, deceased; and as guardian and guardian-ad-litem for Jordan Jody Halstead, the minor son of Jody Glenn Dodgion. I R.Doc. 1 Exhibit B. In May 1988 State Farm filed the instant suit for declaratory relief in the federal district court seeking a judicial determination that it did not have a duty to defend Dyer in the wrongful death action or to afford indemnity on any judgment which might be entered against Dyer. Colley moved to dismiss the declaratory judgment action on the grounds that the controversy was not ripe for declaratory relief; that State Farm had failed to join Dyer, an indispensable party; and that State Farm had failed to state a claim for relief.
 
 
 8
 The district judge denied Colley's motion to dismiss. He concluded that State Farm faced more than a hypothetical dilemma and thus there was a live controversy. Although Colley's motion asserted lack of subject matter jurisdiction, this argument was articulated as lack of a justiciable controversy, not an absence of diversity of citizenship. Nevertheless, the district judge's order states that Colley also contended that State Farm had not shown diversity of citizenship (which was alleged in the complaint). It was undisputed that State Farm was an Illinois corporation. However, because State Farm had not been able to locate Dyer, Colley argued Dyer's domicile was unknown and thus it could be Illinois. The judge rejected the claim of lack of a showing of diversity of citizenship. The judge noted that at the hearing, State Farm stated Dyer was obviously in Wyoming at the time of the accident, he had an Oregon driver's license, and his last known domicile was in Oregon. The judge found that Dyer was domiciled in Wyoming or Oregon and that no evidence indicated he was domiciled in Illinois. I R.Doc. 31, Order Denying Motion to Dismiss at 5.
 
 
 9
 That order also rejected Colley's contention that State Farm failed to properly join Dyer, an indispensable party. The judge held that the Wyoming long-arm statute was properly used to obtain jurisdiction of Dyer. The contention that State Farm failed to state a claim was dismissed as it was based on the two other contentions, which were rejected.
 
 
 10
 State Farm and Colley both moved for summary judgment in June 1989. Following a hearing, judgment was granted for State Farm and denied for Colley on July 28, 1989. I R.Doc. 56, Order on Motions for Summary Judgment. That order found that the facts were undisputed:[6] At the time of the accident both Dyer and Dodgion were acting in the scope of their employment for Rock Springs Roofing, a roofing company owned by the Boyds. The vehicle involved was owned by Steven Boyd and insured by State Farm. Colley's motion contended again that diversity was not shown and that personal jurisdiction was not obtained over Dyer, allegedly an indispensable party. These points were rejected for the reasons given when the motion to dismiss was denied.
 
 
 11
 The Order also rejected a new contention that Wyoming's compulsory insurance laws impose a duty on State Farm to defend Dyer. The State Farm policy was found to comply with the statute and under the policy, Dyer was held to be an additional insured. State Farm contended, however, that policy exclusions in the co-employee and employer-employee provisions eliminated coverage for Dyer. The order rejected Colley's argument that State Farm waived such objections and held that State Farm had reserved its right by a reservation of rights agreement. Therefore declaratory relief was granted for State Farm and denied for Defendants. This appeal followed.
 
 
 12
 On appeal, Colley argues that the district court erred because there was inadequate proof of diversity jurisdiction; Dyer was an indispensable party who had not been properly served with process; State Farm had waived a defense of noncooperation by Dyer[7]; and Wyoming's compulsory insurance and financial responsibility laws override the policy exclusion for bodily injury to a fellow employee.
 
 II
 A.
 
 13
 We turn to the challenge to State Farm's showing of diversity jurisdiction. As noted above, Colley's motion to dismiss argued that there was a lack of subject matter jurisdiction on the theory there was no justiciable controversy. This contention was rejected in the Order Denying Motion to Dismiss. I R.Doc. 31 at 3-4. This Order, however, also states that Colley contended that the district court had no subject matter jurisdiction because plaintiff had not shown diversity of citizenship. In some manner, the diversity issue was suggested to the court, which is proper for a determination under a motion made pursuant to Rule 12(b)(1) Fed.R.Civ.P. That objection was overruled, but the challenge to diversity jurisdiction was renewed in defendant Colley's motion for summary judgment, I R.Doc. 32 at 2, and was argued in Colley's memorandum in support of her motion for summary judgment, Memorandum at 3-6.
 
 
 14
 In Thompson v. United States, 291 F.2d 67 (10th Cir.1961), we stated:
 
 
 15
 A motion for summary judgment lies whenever there is no genuine issue as to any material fact. It is not a substitute for a motion to dismiss for want of jurisdiction. If the court lacks jurisdiction it cannot render a judgment but must enter an order dismissing the action. We need not dwell on the improper manner in which the jurisdictional issue was invoked. It is elementary that the court's first duty is to determine its jurisdiction to entertain and decide a case on its merits. It must make this determination regardless of the impropriety of appellee's motion.
 
 
 16
 Id. at 68. The court vacated the district court's judgment and remanded with instructions to enter a judgment of dismissal. Id. See also Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir.1987).[8] The assertion of lack of diversity may also be treated as a "suggestion" of lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3). See Walls v. United States, 651 F.Supp. 1049, 1050 (S.D.Ind.1987), aff'd, 832 F.2d 93 (7th Cir.1987); Mayes v. Gordon, 536 F.Supp. 2, 4 n. 1 (E.D.Tenn.1980); Grynberg v. B.B.L. Associates., 436 F.Supp. 564, 565-66 (D.Colo.1977); see generally 25A Wright & Miller, Federal Practice and Procedure: Jurisdiction 2d Sec. 1350 at 209 (1990). A party should suggest lack of subject matter jurisdiction to the court, just as it is the court's duty to challenge assertions of jurisdiction sua sponte. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 182, 186-87, 56 S.Ct. 780, 782, 783-84, 80 L.Ed. 1135 (1936).
 
 
 17
 We observe that the ruling below, upholding diversity jurisdiction, should be reviewed on appeal not on the standard for review of a summary judgment. Instead, the finding here on Dyer's citizenship and diversity jurisdiction, a mixed question which is primarily factual, should be reviewed under the clearly erroneous standard. Uselton v. Commercial Lovelace Motor Freight, Inc., 940 F.2d 564, 572 (10th Cir.1991), cert. denied sub nom. Pepsico, Inc. v. Uselton, --- U.S. ----, 112 S.Ct. 589, 116 L.Ed.2d 614 (1991), and cert. denied sub nom. Alcox v. Uselton, --- U.S. ----, 112 S.Ct. 589, 116 L.Ed.2d 614 (1991).
 
 B.
 
 18
 Once the averment of diversity of citizenship was challenged, the burden was on State Farm as the party invoking federal jurisdiction to show that it exists. Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir.1983). Here the assertion of defendant-appellant Colley is that the citizenship of defendant Dyer in this declaratory judgment suit was not shown to be diverse from that of plaintiff-appellee State Farm, an Illinois citizen. In his order denying the defendants' motion to dismiss, the district judge stated that at the hearing on the motion to dismiss, the plaintiff had said that Dyer was obviously in Wyoming at the time of the accident, Dyer had an Oregon driver's license, and his last known domicile was in Oregon. The judge concluded that the evidence indicates Dyer was domiciled in Wyoming or Oregon and no evidence was presented indicating that Dyer was domiciled in Illinois. I R.Doc. 31, Order Denying Motion to Dismiss at 5.
 
 
 19
 In Colley's motion for summary judgment, the challenge to diversity jurisdiction was renewed. I R.Doc. 32 at 2. In the Order on the motions for summary judgment, the jurisdictional challenge was again rejected. The earlier findings of the Order denying the motion to dismiss were reaffirmed. The Order on Motions for Summary Judgment stated:
 
 
 20
 The determination that diversity of citizenship exists is affirmatively reenforced by affidavits indicating that Dyer's last known address was Oregon. Harrison Affidavit at p 2 (June 19, 1989); Rolich Affidavit at p 6.b (June 19, 1989). Colley's same arguments, based upon the same record, fail for the same reasons set forth in the earlier order.
 
 
 21
 I R.Doc. 56 at 4.
 
 
 22
 We are persuaded that the finding that the evidence indicates Dyer was domiciled in Wyoming or Oregon was not clearly erroneous. Colley argues that State Farm's answer to interrogatories in March 1988 admitted that the present address, phone number and employer of Dyer were unknown. Colley also points to a statement in State Farm's memorandum supporting its motion for summary judgment that while "evidence indicated that Dyer was in Oregon as of September 25, 1986, efforts to locate him there in 1988 prior to commencement of [the declaratory judgment suit] failed." I R.Doc. 36 at 13.
 
 
 23
 However, there was an admission made by Colley in her complaint in the Wyoming wrongful death action which is relevant. There Colley alleged that "[a]t all times material to this Complaint, Defendant Teddy Ray Dyer was ... a resident of Sweetwater County, Wyoming." I R.Doc. 1, Exh. B, p 7. This allegation concerning Dyer's residence contradicts Colley's implicit assertion that Dyer might be a citizen of Illinois, like State Farm, thus preventing reliance on diversity jurisdiction. The evidentiary admission of Colley in the wrongful death action on Dyer's residence is admissible against Colley in this action. Dugan v. EMS Helicopters, Inc., 915 F.2d 1428, 1431-35 (10th Cir.1990) (prior inconsistent pleadings admissible as substantive evidence against pleader in subsequent federal action); see also Kubin v. Miller, 801 F.Supp. 1101, 1111 (S.D.N.Y.1992) (party's allegation in prior lawsuit of New York citizenship belies present claim of Connecticut citizenship); Avins v. Hannum, 497 F.Supp. 930, 941-43 (E.D.Pa.1980) (party's allegations in prior suit of Delaware domicile considered against him on diversity jurisdiction issue).
 
 
 24
 Moreover, Colley's allegation in the state court complaint that Dyer was a Wyoming resident created a presumption of continuing residence in Wyoming and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise (in this case Colley herself). See Lew v. Moss, 797 F.2d 747, 751 (9th Cir.1986); Boston Safe Deposit & Trust Co. v. Morse, 779 F.Supp. 347, 349-50 (S.D.N.Y.1991); Garcia v. American Heritage Life Ins. Co., 773 F.Supp. 516, 519-20 (D.P.R.1991); 1 Moore's Federal Practice, p 0.74[3.-3] at 785 (2d ed. 1993). No such contrary evidence appears in the record before us and therefore there is a permissible inference that Dyer remained a Wyoming resident until the commencement of this action. In Spann v. Northwestern Mut. Life Ins. Co., 795 F.Supp. 386, 390 (M.D.Ala.1992) the court stated:
 
 
 25
 Prior to his disappearance [defendant] was domiciled in Dothan, Alabama. Since no one knows where he went there is no way to show that he has taken up residence elsewhere with intent to stay.... As such, his current domicile for diversity purposes is still considered to be Alabama.
 
 
 26
 This analysis supports the conclusion from the evidence herein that Dyer was domiciled in Wyoming or Oregon.[9] Order Denying Motion to Dismiss at 5 and Order on Motions for Summary Judgment at 4.
 
 
 27
 Further, we note that the affidavit of Frank Rolich subscribed June 16, 1989, cited in the judge's order on the motions for summary judgment, stated that Rolich had received information from the Oregon Department of Motor Vehicles that as of September 25, 1988, Dyer's Oregon driver's license showed his address as General Delivery, Vernonia, Oregon, although Dyer was not, however, successfully located in Oregon or Idaho. This affidavit was included in Exhibit D to Colley's opening brief. Such evidence about Dyer having an Oregon driver's license is relevant in determining Dyer's domicile for diversity purposes. E.g., Lew v. Moss, 797 F.2d at 750, 752 (listing factors determining domicile, including a person's residence and source of driver's license); Boston Safe Deposit & Trust Co. v. Morse, 779 F.Supp. at 349 (same); 13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d Sec. 3612 at 530-31 (1984) (same).
 
 
 28
 There is, in addition, the affidavit of Frederick Harrison, cited in the order on motions for summary judgment below. This affidavit was also subscribed on June 16, 1989, and it stated that on June 20, 1988, a certified letter was sent to Dyer, General Delivery, Vernonia, Oregon, "his last known address," and this was returned to Harrison "unclaimed." I Supp.R.Doc. 37 at 2.
 
 
 29
 While there are references in the evidence to Dyer's residence instead of his domicile and citizenship, we feel this is not fatal to jurisdiction. Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the domicile. See Walden v. Broce Construction Co., 357 F.2d 242, 245 (10th Cir.1966); Houston v. Astle, 435 F.2d 847, 848 (3d Cir.1970). We are satisfied that the evidentiary showing in the record is such that the determination of diversity for jurisdictional purposes was not clearly erroneous and should be sustained. Crowley v. Glaze, 710 F.2d at 678.
 
 III
 
 30
 Colley next contends that there was also a lack of personal jurisdiction over Dyer whom Colley believes to be an indispensable party. The district court found that the Wyoming nonresident motorist statute, Wyo.Stat.Ann. Sec. 1-6-301 (1977), was properly used here to obtain service on Dyer. Colley contends, however, that the statute was not intended to cover declaratory judgment actions concerning a contract. For reasons that follow, we need not reach this issue of the challenge to the service on Dyer attempted under the long-arm statute.
 
 
 31
 Dyer was named as a defendant and purportedly served under the long-arm statute. An appearance was entered for him and an answer was filed for him by counsel. I Supp.R.Doc. 45; I R.Doc. 43. The answer averred that "[a]ffirmatively, defendant alleges process and service of process are defective as relied on by plaintiff herein and that the court is, therefore, without jurisdiction in this matter as to the answering defendant." Id. at p 17. However, these objections were rejected below in the Order on Motions for Summary Judgment, which reaffirmed an earlier ruling that "personal jurisdiction over Dyer had been properly obtained under Wyoming's nonresident motorist statute." I R.Doc. 56 at 4.
 
 
 32
 Dyer did not appeal and the only notice of appeal in our record is that for Alice Ione Halstead Colley in the capacities stated in the caption.[10] Thus, as to defendant Dyer, State Farm has obtained a final ruling that Dyer was properly served. Moreover, any alleged defect in the district court's jurisdiction over Dyer was a personal defense that could not be raised for him by another party. Williams v. Life Sav. and Loan, 802 F.2d 1200, 1202 (10th Cir.1986).
 
 
 33
 In conclusion, the record supports that Dyer was properly joined and served herein.
 
 IV
 
 34
 On the merits of the coverage controversy, Colley argues that State Farm has both a statutory and contractual obligation to provide coverage to Dyer. As the relevant facts on these arguments are undisputed, we review the district court's interpretation of the contract and Wyoming's insurance laws de novo. We are instructed that "[t]he obligation of responsible appellate review and the principles of a cooperative judicial federalism underlying Erie require that courts of appeals review the state law determinations of district courts de novo." Salve Regina College v. Russell, 499 U.S. 225, 239, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991). See also United States v. Johnson, 941 F.2d 1102, 1111 (10th Cir.1991) (statutes); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1345 (10th Cir.1992) (contracts).
 
 
 35
 The contentions made by the plaintiff-appellant Colley require consideration of both the State Farm liability insurance policy and the Wyoming compulsory insurance and financial responsibility laws. We turn first to State Farm's liability policy, which provided in part:
 
 THERE IS NO COVERAGE:
 
 36
 ....
 
 2. FOR ANY BODILY INJURY TO:
 
 37
 a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. You and your spouse are covered for such injury to a fellow employee.
 
 
 38
 b. ANY EMPLOYEE OF AN INSURED ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is not covered or required to be covered under any worker's compensation insurance.
 
 
 39
 We believe that it is helpful and important to distinguish between these two types of exclusionary clauses. We will refer to the first as a "fellow-employee exclusion"[11] and to the second as an "insured's-employee exclusion."[12] The trial court concluded both of these exclusions precluded coverage in the instant case and that each exclusion was consistent with the Wyoming compulsory insurance and financial responsibility laws. We affirm the trial court and believe that the case of Baker v. Depew, 860 S.W.2d 318 (Mo.1993), provides a helpful analysis in regard thereto.[13]
 
 
 40
 Under the plain language of clause 2.a. of the policy (the fellow-employee exclusion), there is no contractual obligation for State Farm to provide coverage to Dyer because the liability arose from the death of Dodgion, a fellow employee, as a result of the use of a vehicle by another employee (Dyer) in the Boyds' business, Rock Springs Roofing. Further, clause 2.b. of the policy (the insured's-employee exclusion), also excludes coverage in the instant case because the death of Dodgion arose out of his employment with "an insured" (Boyd). Id. at 321.
 
 
 41
 Colley argues that pursuant to Barnette v. Hartford Ins. Group, 653 P.2d 1375 (Wyo.1982), the term "insured" in clause 2.b. should be interpreted as referring only to the party seeking protection under the policy. However, the Barnette court premised its holding on the presence of a severability clause.
 
 
 42
 If it were not for the severability of interest clause ... it could be presumed that [the Plaintiff] might be denied coverage by the cross-employee exclusionary clause contained in the ... contract.
 
 
 43
 Id. at p. 1376 (emphasis added).
 
 
 44
 [A]bsent the severability-of-interest clause ..., the policy excludes from the definition of insured any person who, while engaged in the business of his employer ... inflicts bodily injury upon a fellow employee ... where the injury occurs in the course of employment. (footnote omitted).
 
 
 45
 Id. at p. 1377 (emphasis added). We agree with the trial court's conclusion that the State Farm liability insurance policy does not contain a severability clause and for that reason, Barnette is not controlling.
 
 
 46
 For these reasons, we conclude both exclusions in the State Farm policy are applicable and as a result, State Farm has no contractual obligation to provide coverage to Dyer and State Farm is entitled to a declaratory judgment, unless coverage is mandated by state law.
 
 
 47
 Colley argues that the Wyoming Motor Vehicle Safety Responsibility law, Wyo.Stat.Ann. Sec. 31-9-405 (Cum.Supp.1985), together with the Wyoming compulsory insurance law, Wyo.Stat.Ann. Sec. 31-4-103, mandates coverage for Dyer. The Wyoming compulsory insurance law obligates every owner of a motor vehicle that is required to be licensed to have in full force and effect an automobile liability policy conforming with the provisions of the Wyoming financial responsibility law. Wyo.Stat.Ann. Sec. 31-4-103(a) (1977). The Wyoming financial responsibility law provides in relevant part as follows:
 
 
 48
 (b) An owner's policy of liability insurance shall:
 
 
 49
 . . . . .
 
 
 50
 (ii) Insure the person named and any other person, as insured, using any covered motor vehicle with the express or implied permission of the named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the motor vehicle ...
 
 
 51
 (e) The motor vehicle liability policy shall not insure any liability under any worker's compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any motor vehicle nor any liability or damage to property owned by, rented to, in charge of or transported by the insured.
 
 
 52
 Wyo.Stat.Ann. Sec. 31-9-405.
 
 
 53
 Colley correctly argues that the fellow-employee and the insured's-employee exclusions in the State Farm policy are void, unless they are consistent with the statutory language provided in Wyo.Stat.Ann. Sec. 31-9-405(e) (quoted above). See Allstate Ins. Co. v. Wyoming Ins. Dept., 672 P.2d 810, 815-816 (Wyo.1983). Colley asserts that the exceptions in the State Farm liability insurance policy are impermissibly broader than the statutory exceptions and therefore the State Farm policy should be enforced as if it did not contain the impermissible exclusions. Id. at 820-821.
 
 
 54
 The specific issue we must address is whether the provision set out in Wyo.Stat.Ann. Sec. 31-9-405(e) regarding "any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment ... of the insured" is inconsistent with or overrides the subject employee exclusions in the State Farm insurance policy. We conclude that it does not.
 
 
 55
 It is undisputed that Dyer was a permissive user of Boyd's vehicle and thus Dyer was an additional "insured" under the terms of the State Farm policy. It is also undisputed that Dodgion was not an employee of Dyer.[14] Colley thus concludes the statutory exclusion for "death of an employee of the insured" is not applicable because Dodgion was not an employee of Dyer (the specific insured seeking coverage) and therefore State Farm is required by state law to provide coverage to Dyer.
 
 
 56
 Specifically, Colley contends the words "the insured" in the Sec. 31-9-405(e) provision should be construed to refer only to the particular individual seeking coverage under the policy (Dyer).[15] In other words, she asks the Court to interpret "the insured" in the statute in the same manner the Wyoming Supreme Court interpreted "the insured" in an insurance policy which contained a severability-of-interest clause.[16] See Barnette v. Hartford Ins. Group, 653 P.2d 1375 (Wyo.1982).
 
 
 57
 Neither the language of the statute nor the public policy for the statute support such an interpretation in this case. The Wyoming financial responsibility statute does not contain a severability-of-interest clause or any other similar provision which would suggest that the Wyoming legislature intended for the term "the insured" to be narrowly construed to mean only the particular individual seeking coverage under the policy. Further, we are not persuaded to read a severability-of-interest clause into the statute and thus we conclude the words "the insured" in Wyo.Stat.Ann. Sec. 31-9-405(e) should be interpreted collectively, to refer to any of the insureds. See Baker v. DePew, 860 S.W.2d 318, 323-324 (Mo.1993) (A severability-of-interest clause should not be read into a financial responsibility law absent some clear requirement to do so.) and Short v. Safeco Ins. Co. of America, 864 S.W.2d 361 (Mo.App.1993).[17]
 
 
 58
 It is undisputed in the instant case that Dodgion was an employee of Boyd, the named insured under the State Farm policy. Consequently, the Sec. 31-9-405(e) "employee of the insured" provision is applicable, and there is no statutory obligation for State Farm to insure against liability for the "death of an employee (Dodgion) of the insured (Boyd) while engaged in the employment ... of the insured."[18]
 
 
 59
 We further conclude that the fellow-employee and the insured's-employee exclusions in the State Farm policy are consistent with the purpose and public policy behind the Wyoming compulsory insurance laws and the exceptions contained therein. See generally Baker v. Depew, 860 S.W.2d 318 (Mo.1993) and Short v. Safeco Ins. Co. of America, 864 S.W.2d 361 (Mo.App.1993). The purpose of compulsory automobile liability insurance:
 
 
 60
 ... is to protect members of the general public injured on the highways through the operation of the covered motor vehicle, by giving them security for the payment of their damages.
 
 
 61
 Allstate, 672 P.2d at 816-817 (quoting 12A Couch on Insurance 2d, Sec. 45:682, p. 319 (1961)).
 
 
 62
 However, the Wyoming compulsory insurance laws do not require coverage in all situations. The financial responsibility law expressly excludes any requirement of coverage for liability on account of bodily injury to "an employee of the insured."
 
 
 63
 Employee exclusions are aimed at employees as opposed to "members of the general public" because employees are already covered by worker's compensation insurance and thus do not need "security for the payment of their damages". There is no imperative public policy need for automobile liability insurance where the injured party is covered by worker's compensation. See Barnette, 653 P.2d at 1377-78. The Wyoming Supreme Court has pointed out that the "reason for the employee exclusionary clause was that the remedy for one employee injuring a fellow employee should be workmen's compensation." Id., 653 P.2d at 1377 (citing Myers v. Fidelity & Casualty Company of New York, 152 So.2d 96 (La.App.1963)) and State Farm Mut. Auto. Ins. Co. v. Hollingsworth, 668 F.Supp. 1476 (D.Wyo.1987) (the purpose of a fellow-employee exclusion is to protect an employer from having to pay for separate insurance in addition to workers' compensation). It is undisputed that workers compensation was available in this case, and was paid to Jordan Jody Halstead, child of the deceased. As a result, there is no compelling public policy need for automobile liability insurance coverage in this case.
 
 
 64
 The Wyoming Supreme Court has concluded the statutory exceptions in the financial responsibility law do not conflict with the public policy of protecting the motoring public and that these exceptions legitimately limit the coverage required by the compulsory insurance statute. Allstate, 672 P.2d at 814. The fellow-employee and insured's-employee exclusions in the State Farm insurance policy simply mirror, or adopt, the statutorily recognized exception to the compulsory insurance law in Sec. 31-9-405(e). For this reason, we conclude the exclusions in the State Farm policy are consistent with the statutory exceptions and the public policy for the compulsory insurance statutes.
 
 
 65
 We hold that neither the State Farm liability insurance policy nor the Wyoming compulsory insurance laws obligate State Farm to provide coverage for the death of an employee of its named insured arising out of his employment where the injury arose from the use of a vehicle by a fellow employee. We further hold that the fellow-employee and insured's-employee exclusions in the State Farm policy are consistent with the Wyoming Motor Vehicle Safety Responsibility law, Wyo.Stat.Ann. Sec. 31-9-405 (Cum.Supp.1985), and the Wyoming compulsory insurance law, Wyo.Stat.Ann. Sec. 31-4-103.
 
 V
 
 66
 Accordingly, the declaratory judgment of the United States District Court for the District of Wyoming is AFFIRMED.
 
 
 67
 IT IS SO ORDERED.
 
 
 68
 HOLLOWAY, Circuit Judge, concurring in part and dissenting in part:
 
 
 69
 I concur in Parts I, II and III of the majority opinion but respectfully dissent with respect to Part IV concerning the merits of the coverage controversy. I agree with the majority's conclusion that the fellow-employee exclusion contained in clause 2.a. of the State Farm policy is applicable here as a purely contractual matter. However, because I believe that this policy exclusion is impermissibly broader than the exceptions to coverage allowed under Wyoming's financial responsibility law and its compulsory insurance law, I would hold that coverage is mandated as to Dyer by state law to the extent of the minimum coverage amount specified by the statutes.
 
 
 70
 Under Wyoming law, every owner of a motor vehicle that is required to be licensed must have in full force and effect an automobile liability policy conforming with the provisions of the state's financial responsibility statute.[1] Wyo.Stat.Ann. Sec. 31-4-103 (1977). That statute mandates that an owner's liability policy shall "[i]nsure the person named and any other person, as insured, using the covered motor vehicle with the express or implied permission of the named insured." Wyo.Stat.Ann. Sec. 31-9-405 (Cum.Supp.1985) (emphasis added). However, the statute permits an exclusion for "any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured. " Wyo.Stat.Ann. Sec. 31-9-405(e) (emphasis added).
 
 
 71
 Whether the minimum coverage mandated ($25,000 for bodily injury or death) must be afforded in this case depends on the meaning of "the insured" in the statutory exception in Sec. 31-9-405(e). The majority opinion construes "the insured" to mean, in effect, "any insured" so as to encompass all who could be covered by the policy. See majority op. at 523-524. By construing the statutory exception to deny coverage in this way, the majority disregards the rule of statutory construction applied by the Wyoming Supreme Court in Allstate Insurance Co. v. Wyoming Insurance Department, 672 P.2d 810 (Wyo.1983):
 
 
 72
 A compulsory liability policy is to be construed most strongly against the insurer--that is, such statutes as those with which we are here concerned [the Wyoming financial responsibility and compulsory insurance laws] must be liberally and broadly construed in favor of the insured in order to accomplish its [sic] purpose.
 
 
 73
 Id. at 817 (citing Couch on Insurance 2d, Automobile Insurance Sec. 45:692, p. 330 (1961)) (emphasis added). In Allstate, the Wyoming Supreme Court held that under the specific exceptions to the compulsory insurance law, the Court could not give effect to the household exclusion provisions of Allstate's policies. "The effect of such a decision would be to violate the statutes and public policy of the State of Wyoming...." 672 P.2d at 815.
 
 
 74
 Contrary to the interpretation indicated by Allstate, the majority opinion here construes the statute in favor of the insurer. Under Allstate, because the statutory reference to "the insured" is ambiguous, the term should be construed in favor of coverage, i.e., as referring only to the particular person seeking coverage under the policy. Thus, Wyoming law supports Colley's position that the statutory exception for "death of an employee of the insured" is not applicable because Dodgion (the decedent) was not an employee of Dyer (the person seeking coverage "as insured"). Therefore, State Farm is required by the insurance statutes and the clearly declared public policy of Wyoming to provide coverage to Dyer to the extent of the statutory minimum.
 
 
 75
 This conclusion is reinforced by close study of the statutory language of the exception in (e) and another subsection of the statute. In subsection (b)(ii), the statute requires an owner's policy to insure the person named and any other person, "as insured," so long as the other person is using the vehicle with the permission of the named insured. Under the statute, then, the permissive user (or operator) becomes "the insured," entitled to protection from the stated liability. Coverage may only be excluded for "an employee of the insured." The insured in this case is Dyer, the permissive user operating the vehicle. Because Dodgion is not an employee of Dyer, Dyer may not be excluded from coverage. Use of the definite article "the " in the statute shows that "the insured" does not refer to the entire class of those who may be insured but, instead, only to the particular insured seeking coverage under the policy. In light of this analysis and the mandate of Allstate, I read the statutory exception to apply only where an employee-employer relationship exists between the injured claimant and the party seeking coverage under the policy.
 
 
 76
 This interpretation of the statute comports with cases in other jurisdictions construing similar statutes. For example, in United States v. Transport Indemnity Co., 544 F.2d 393 (9th Cir.1976), the California statutes in question excluded liability for "bodily injury ... of any employee of any insured...." Id. at 395. Finding the exclusion inapplicable, the Ninth Circuit stated that:
 
 
 77
 The courts have held that in order for an employee exclusion clause to operate, in the face of financial responsibility requirements (the sections of California law requiring coverage of permissive users)[,] the employment relationship must exist between the injured party and the party seeking protection under the act.
 
 
 78
 544 F.2d at 396 (emphasis added) (citations omitted).
 
 
 79
 The majority opinion relies on two Missouri cases to support its contrary interpretation of the statutory exception. See majority op. at 523. I do not believe that these cases are indicative of what the Wyoming courts would hold. In the leading case, Baker v. DePew, 860 S.W.2d 318 (Mo.1993), the Missouri Supreme Court, with two Justices dissenting in part, declined "to override the express agreement of the parties" to an insurance contract and instead upheld a fellow-employee exclusion despite Missouri's Motor Vehicle Financial Responsibility Law. The court expressly based its holding on "the sanctity of contracts." Id. at 324. The dissenting Justices in Baker rejected the majority's reliance on "sanctity of contract" and found that the purpose of Missouri's compulsory insurance law was to make sure that all owners and operators of motor vehicles were covered. Id. at 325. I am convinced that the dissenting Justices in Baker have the better-reasoned position. The Wyoming statutes with which we are here concerned, like the Missouri ones, mandate coverage for both owners and operators.[2] Therefore, the statutory exception for liability to an employee of the insured is determined in this case by the injured person's relation to the operator of the vehicle.
 
 
 80
 The Missouri Court's interpretation giving primacy to the policy provisions is inconsistent with the clear holding of the Wyoming Supreme Court in Allstate. The Wyoming Court declared:
 
 
 81
 While the parties to an insurance contract have the right to embody in the policy such lawful terms as they wish, the insurance agreement must not conflict with pertinent statutes or public policy....
 
 
 82
 ....
 
 
 83
 In those circumstances where insurance is required to comply with a statute and the insurance policy contains exclusions which are contrary to statutory mandates, it is held that such exclusion clauses are void as against public policy and the insurance policy will be enforced as though the exclusions were not contained therein.
 
 
 84
 Allstate, 672 P.2d at 816, 820 (citations omitted). In light of these clear pronouncements on the public policy of Wyoming, I must disagree with the majority opinion's interpretation (majority opinion at 523) favoring the insurance company, when a plainly reasonable interpretation in favor of coverage is possible. See United States v. Transport Indemnity Co., 544 F.2d at 396 ("[so] long as coverage is available under any reasonable interpretation of an ambiguous clause, the insurer cannot escape liability.").
 
 
 85
 The second case on which the majority relies, Short v. Safeco Ins. Co. of America, 864 S.W.2d 361 (Mo.App.1993), simply follows Baker without further explanation. Consequently, I find it similarly unpersuasive in light of the clear Wyoming law to the contrary.
 
 
 86
 The majority also bases its interpretation of the statute on the fact that "the Wyoming financial responsibility statute does not contain a severability-of-interest clause." Majority op. at 523. This observation provides little or no insight into the meaning of the statute. Although a severability-of-interest clause is a common provision in automobile insurance policies, it is not the sort of provision that would be found in a statute. The effect of such a clause is simply to treat the named insured and the additional insured as if each had a separate policy. Thus, it is necessarily a contractual provision, rather than a statutory one. Moreover, even in the absence of a severability-of-interest clause, many courts treat the named insured and the additional insureds separately. The Wyoming Supreme Court recognized as much in Barnette v. Hartford Ins. Group, 653 P.2d 1375, 1382 (Wyo.1982) (severability-of-interests clauses were added to the standard automobile policy for the purpose of clarifying the confusion that had existed due to conflicting decisions interpreting exclusion provisions).
 
 
 87
 Nor is the availability of worker's compensation a compelling reason to construe the statute so as to deny coverage to Dyer. The majority relies on Barnette in support of its claim that the reason for the employee exclusionary clause in the statute was that the remedy for one employee injuring a fellow-employee should be workman's compensation. Majority op. at 524. However, the Barnette court was discussing an insurance policy, not this statute. 653 P.2d at 1377. Barnette, in turn, relied on a Louisiana case that also dealt only with the interpretation of an insurance policy. See Myers v. Fidelity and Casualty Co. of New York, 152 So.2d 96 (1963). Barnette never mentions the Wyoming compulsory insurance or financial responsibility statute. Thus, it is not probative of the purpose of these Wyoming statutes. Moreover, in Barnette, the court ultimately concluded that the policy exclusion did not deny coverage, even though worker's compensation was available.
 
 
 88
 A better indicator of Wyoming's public policy concerning the exclusivity of the worker's compensation remedy is the Worker's Compensation Law itself. In 1985, the time of Dodgion's fatal accident, Wyoming Statute Sec. 27-12-103 allowed recovery against a coemployee for "culpable negligence." Wyo.Stat.Ann. Sec. 27-12-103(a).[3] Thus, worker's compensation is not necessarily an exclusive remedy in this case.[4] For these reasons, the majority's reliance on the statement from Barnette concerning worker's compensation is misplaced.
 
 
 89
 In sum, under the principles of statutory interpretation applied in Wyoming, I am convinced that the statutory term "the insured" in the exclusionary language of the statute means Dyer, the party whose coverage is in question. Since Dyer was not Dodgion's employer, the statutory exception is inapplicable and the mandatory minimum coverage should be afforded to Dyer. Accordingly, I would reverse the summary judgment denying coverage to the extent of the minimum prescribed by the Wyoming statutes ($25,000 because of bodily injury or death of one person) and hold that up to that statutory minimum, under Sec. 31-9-405(b) and (e) coverage is mandated for Dyer. Above that limit, I would hold that the summary judgment was correct in determining that under the fellow-employee exclusion of section 2.a. of the policy, unaffected by the financial responsibility law, no additional coverage was afforded to Dyer.[5]
 
 
 
 *
 The Honorable Thomas R. Brett, United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this Appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. This case is therefore ordered submitted without oral argument
 
 
 [2]
 Colley is the mother of Dodgion's illegitimate minor son, Jordan Jody Halstead. Colley has been appointed as the personal representative and administratrix of Dodgion's estate as well as the guardian, conservator, and guardian ad litem of Jordan Jody Halstead. I R.Doc. 6 at 6
 
 
 [3]
 This reference and those hereafter made to "defendants" includes the parties shown in the caption as defendants-appellants
 
 
 [4]
 Rock Springs Roofing is apparently a partnership owned by Steven and Jeanne Boyd
 
 
 [5]
 The subject policy (No. 0798 805-E15-50) insured Steven Boyd's 1978 Chevrolet pickup truck for the period of May 15, 1985, to November 15, 1985
 
 
 [6]
 The Order on Motions for Summary Judgment was entered by the magistrate pursuant to a stipulation under 28 U.S.C. Sec. 636(c)(1). Then the district judge himself entered a declaratory judgment based on the magistrate's detailed order
 
 
 [7]
 This argument is rendered moot as a result of the Court's ruling on the other issues and thus, need not be addressed herein
 
 
 [8]
 In Winslow the Seventh Circuit explained that:
 A party may move to dismiss for failure to state a claim under either Rule 12(b)(6) or, where the movant asks the court to consider materials outside the pleadings, under Rule 56. However, a party may move to dismiss for lack of subject matter jurisdiction only under Rule 12(b)(1). There is good reason for requiring parties to plead these motions differently. A ruling that a party has failed to state a claim on which relief may be granted is a decision on the merits with full res judicata effect. A party may therefore seek summary judgment, which is on the merits, on this issue. In contrast, a ruling granting a motion to dismiss for lack of subject matter jurisdiction is not on the merits; its res judicata effect is limited to the question of jurisdiction. See Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). Seeking summary judgment on a jurisdictional issue, therefore, is the equivalent of asking a court to hold that because it has no jurisdiction the plaintiff has lost on the merits. This is a nonsequitur....
 Winslow, 815 F.2d at 1116.
 
 
 [9]
 We have also noted that in an answer filed through counsel for Dyer in the federal declaratory action, there was a statement that "Defendant admits for purposes of this action that he is a resident of the State of Oregon," while the remaining allegations of paragraph 2 of the complaint were denied for lack of sufficient knowledge to form a belief as to their truthfulness. While this admission may be considered against Dyer on the diversity of citizenship question, it is not admissible against Colley and the other codefendants who are challenging diversity jurisdiction in the instant case. See Leeds v. Marine Ins. Co. of Alexandria, 15 U.S. (2 Wheat.) 380, 381, 4 L.Ed. 266 (1817) ("the answer of one defendant cannot be used as evidence against his co-defendant"); Milton Roy Co. v. Bausch & Lomb Inc., 418 F.Supp. 975, 977-78 (D.Del.1976) (answer of one defendant admitting facts against the interest of co-defendants "cannot be used by the plaintiff to affect the interests of the [co-defendants]"); 4 Wigmore Evidence, Sec. 1076 at 156 (Chadbourn rev. 1972) ("the admissions of one co-plaintiff or codefendant are not receivable against another, merely by virtue of his position as a coparty in the litigation") (emphasis omitted); 31A C.J.S. Evidence, Sec. 318 at 812 ("[a]n admission of one party is not binding on, or evidence against, a coparty"); 29 Am.Jur.2d Evidence, Sec. 699 at 756 ("the admissions of a defendant are not admissible against his codefendants")
 
 
 [10]
 The notice of appeal states that: "Notice is hereby given that Alice Ione Halstead Colley, as personal representative of Jody Glenn Dodgion, deceased, and as administratrix of the Estate of Jody Glenn Dodgion, deceased, and on behalf of Alice Ione Halstead, as guardian and guardian ad litem for Jordan Jody Halstead, hereby appeal to the United States Court of Appeals for the Tenth Circuit from the Order on Motion for Summary Judgment entered in this action on the 28th day of July, 1989 by Magistrate William C. Beaman, and the Declaratory Judgment entered on the same date by Judge Clarence A. Brimmer." I R.Doc. 60
 
 
 [11]
 Similar clauses are also referred to as "cross-employee exclusions" or "co-employee exceptions," and, more generally, as "employee exclusions." See, e.g., 45 A.L.R.3d 288, Construction and Application of Provision of Automobile Liability Policy Expressly Excluding from Coverage Liability Arising from Actions Between Fellow Employees (referring to "cross-employee exclusion")
 
 
 [12]
 See, e.g., 48 A.L.R.3d 13, Validity, Construction, and Application of Provision in Automobile Liability Policy Excluding from Coverage Injury or Death of Employee of Insured (referring to "insured's employee exclusion clause" as well as "employee exclusion clause")
 
 
 [13]
 While Baker v. Depew is a Missouri state court case and is not controlling authority regarding Wyoming law, it involved similar facts, insurance policy language and statutory language and its analysis is persuasive
 In Baker, the Plaintiff was injured during the course of his employment as a result of the negligence of a fellow employee, who was driving a company truck in which Plaintiff was a passenger at the time of the accident. Plaintiff filed a worker's compensation claim against his employer and then filed suit against the driver of the truck, a fellow employee. The fellow employee sought coverage under the automobile liability insurance policy issued on the truck to his employer, claiming he was a permissive user and thus an insured under the omnibus clause of the policy. The insurer denied coverage based on a fellow employee exclusion in the policy.
 The Baker court examined the policy exclusions and the Motor Vehicle Financial Responsibility Law and concluded:
 
 
 [1]
 Defendant was an additional insured under the policy;
 
 
 [2]
 the policy contained a severability-of-interest clause;
 
 
 [3]
 the fellow employee exclusion was applicable because the plaintiff and the defendant had a common employer and the injury arose in the course of the plaintiff's employment;
 
 
 [4]
 in the absence of the severability clause, the insured's-employee exclusion would also apply, and the insurance company would have no liability under the policy;
 
 
 [5]
 the Motor Vehicle Financial Responsibility Law should not be construed the same as an automobile policy containing a severability-of-interest clause; such a severability-of-interest clause should not be read into the statute absent some clear requirement to do so; and
 
 
 [6]
 the fellow employee exclusion does not violate the Motor Vehicle Financial Responsibility Law
 
 
 [14]
 It is undisputed that Dyer was acting in the scope of his employment with Rock Springs Roofing at the time of the accident in which Dodgion was killed. However, State Farm does not argue that Dyer was acting as Rock Springs Roofing at the time of the accident and that he should be treated, as a matter of law, as Dodgion's employer. We therefore, do not address the issue at this time
 
 
 [15]
 In our view, had the driver been on a personal mission, rather than in the scope of his and Dodgion's employment, we would be more persuaded by the dissent's analysis
 
 
 [16]
 We believe the dissent's conclusion that the statute is ambiguous due to its use of the words "the insured" is based on a strained reading of the statute and places an inordinate emphasis on the use of the article "the"
 
 
 [17]
 The dissent suggests the Baker holding was based solely on a "sanctity of contracts" theory. Our reading of the opinion indicates otherwise. The Baker court analyzed the policy and statutory language and concluded the policy exceptions were consistent with the statutes and thus such exceptions were enforceable. The Baker court's brief discussion regarding the sanctity of contracts appears to be simply an additional basis for the decision but was clearly not the primary grounds for the holding
 
 
 [18]
 The language of the Wyoming financial responsibility law appears to make the Sec. 31-9-405(e) provisions mandatory. Wyo.Stat.Ann. Sec. 31-9-405(e) ("The motor vehicle liability policy shall not insure any liability ... on account of bodily injury to or death of an employee of the insured while engaged in the employment ... of the insured.") (emphasis added)
 
 
 [1]
 Wyoming's financial responsibility law is also known as the "Motor Vehicle Safety-Responsibility Act." See Wyo.Stat.Ann. Sec. 31-9-101
 
 
 [2]
 Wyo.Stat.Ann. Sec. 31-9-405(a) provides: "As used in this act, 'liability policy' means an owner's or an operator's policy of liability insurance...." (Emphasis added)
 
 
 [3]
 The current exclusive remedy provision of the Wyoming Worker's Compensation Act, Sec. 27-14-104, eliminates coemployee liability for culpable negligence
 
 
 [4]
 Even where worker's compensation is the preferred remedy for such injuries, its availability is not determinative. See, e.g., Larimore v. American Ins. Co., 314 Md. 617, 552 A.2d 889 (1987) (holding that fellow-employee exclusion was invalid in light of Maryland's compulsory motor vehicle insurance law, even though injured worker was entitled to worker's compensation benefits)
 
 
 [5]
 Although coverage is in my view mandated by the statute, the question remains whether coverage is available to Dyer in view of Dyer's alleged breach of the policy's cooperation clause. However, I do not reach this issue because the majority opinion has not done so. See Boykin v. Alabama, 395 U.S. 238, 249 n. 3, 89 S.Ct. 1709, 1715 n. 3, 23 L.Ed.2d 274 (Harlan, J., dissenting)