F I L E D
United States Court of Appeals
Tenth Circuit

MAR 28 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MERRILL DAVID KRAMER,

      Plaintiff-Appellant,

v.

SEARS ROEBUCK AND COMPANY,
sued as: Sears, Roebuck and Co., a
New York Corporation; LOUIS
HIGGINS, Originally sued as: Louis
Higgins,

      Defendants-Appellees.

No. 96-5035
(N. District of Oklahoma)
(D.C. No. CV-95-261-BU)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **LUCERO,** and **MURPHY**, Circuit Judges.

Appellant Merrill David Kramer appeals the summary judgment entered

against him on January 8, 1996 by the United States District Court for the

Northern District of Oklahoma.  Kramer originally brought this action in the

District Court for Tulsa County, State of Oklahoma, to recover damages from

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Sears, Roebuck & Co. ("Sears") for intentional infliction of emotional distress. Pursuant to 28 U.S.C. §§ 1332 and 1441, Sears removed the case to the United States District Court for the Northern District of Oklahoma. Kramer appeals the district court's denial of his Motion to Remand as well as the district court's grant of summary judgment in favor of Sears. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRMS the district court's ruling.

## BACKGROUND

Kramer was hired by Sears in 1971. From 1990 until his termination, he was Assistant Facilities Manager at the Woodland Hills Mall store in Tulsa, Oklahoma. In March or April of 1992, Louis Higgins was hired as the store manager and was Kramer's direct supervisor. After Higgins was hired, Sears began a major remodeling project of the Woodland Hills store. Kramer supervised that remodeling project. He had supervised previous remodeling projects for Sears.

Kramer alleges the following undisputed facts as the basis for his intentional infliction of emotional distress claim. On two occasions, Higgins slapped Kramer on the back. One of the slaps left a mark on Kramer's back for a few days. Kramer asked Higgins not to slap him on the back again and Higgins complied with Kramer's request. On other occasions, Higgins startled Kramer by

dropping large objects which made a loud noise behind Kramer. On yet two other occasions, Higgins paged Kramer in the midst of projects to report to a different level of the store. The reasons Higgins had paged Kramer was to ask him to pick up a piece of paper on the floor on one occasion and to tighten a loose screw on the other occasion.

Additionally, Higgins threatened to fire Kramer on three different occasions. On one of those occasions, Higgins denied Kramer's requested leave or time-off, although Higgins later allowed Kramer to take the leave. After one staff meeting, Higgins yelled at Kramer and pounded on the desk because Kramer did not know how to retrieve a report from the computer. When Kramer claimed he had never been trained to retrieve such computer documents, Higgins told Kramer to get out of the room.

During the remodeling project, Higgins kept Kramer on his regular staff schedule so that he was required to close the store on certain nights at 10:30 or 11:00 p.m. and to return to work at 6:00 a.m. to meet with remodeling contractors. Kramer's requests to be taken off staff schedule were denied. In fact, when Kramer came into the store on his days off, Higgins would give him work assignments which required Kramer to stay at the store for up to five hours.

On one occasion, Kramer notified Higgins that certain walls would be torn down during the remodeling project and that an electrical permit would be

required. Higgins told Kramer not to worry and that he would take care of it. Higgins, however, did not acquire the permit. An electrical inspector later came to the store and cautioned Kramer about complying with city codes in the future.

At a company team-building meeting, staff members were taught a "time out" procedure through which an employee could approach a manager about a problem without later repercussions. Higgins told Kramer that the "time out" procedure did not apply to him.

In reviewing Kramer's work in moving the jewelry department, Higgins "ranted and raved" about a strip of carpet approximately one foot long which protruded under a jewelry case into the aisle. Higgins also often carried a tape recorder and told Kramer that he recorded conversations.

During the last three weeks of the remodeling, Kramer was required to work seventeen days straight, and often worked overnight or early into the morning. On August 25, 1992, the day before the remodeling project was finished, Sears hosted a banquet for personnel. Kramer needed to stay at work during the banquet to finish projects. After another employee begged Kramer to go to the banquet, Kramer went but returned to the store and worked until 12:00 or 1:00 that morning. The following day, August 26, 1992, was Kramer's last work day at Sears. Kramer received long-term disability insurance from Sears until his termination on January 31, 1994.

On August 24, 1994, Kramer filed this action in the District Court for Tulsa County, State of Oklahoma. Kramer brought his claim for intentional infliction of emotional distress against Sears and Higgins,[1] based on Higgins' above-described conduct toward Kramer.

On March 21, 1995, Sears filed a Notice of Removal to federal district court pursuant to 28 U.S.C. §§ 1332 and 1441. Kramer subsequently filed a motion to remand the action to Oklahoma state court pursuant to 28 U.S.C. § 1447(c). Kramer contended that removal was improper because complete diversity of citizenship did not exist between Kramer and Higgins at the time the action was filed.[2] The district court held that diversity of citizenship did exist at the time the action was commenced. Specifically, the district court held that Sears had shown by a preponderance of the evidence that Higgins had changed his domicile to New Mexico before August 24, 1994, the date this action was commenced.

Sears filed a motion for summary judgment seeking judgment that, as a matter of law, Kramer's claim was not brought within the applicable statute of

_____

[1] Kramer also alleged a claim against Higgins for interference with Kramer's employment contract. On August 9, 1995, the district court sustained Higgins' Motion to Quash for Insufficient Process. Kramer does not appeal this ruling. Thus, Higgins is not a party to this lawsuit.

[2] Diversity of citizenship between Kramer and Sears was not contested as Sears is incorporated in New York and has its principal place of business in Illinois.

-5-

limitations and the alleged conduct was not sufficiently extreme and outrageous to state a cause of action under Oklahoma law. The district court granted Sears' motion for summary judgment, finding that Kramer's claim was time-barred. The court further found that even if the claim was timely, Kramer had failed, as a matter of law, to allege sufficient facts to give rise to liability for intentional infliction of emotional distress. Kramer now appeals both the district court's order denying his Motion to Remand and the order granting summary judgment in favor of Sears.

**ANALYSIS**

Kramer first claims that the district court erred when it denied his Motion to Remand the case to state court. The court denied Kramer's Motion to Remand because it found that the requirements for diversity jurisdiction had been met. This court has held that a finding of "citizenship and diversity jurisdiction, a mixed question which is primarily factual, should be reviewed under the clearly erroneous standard." *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 518 (10th Cir. 1994). "A finding of fact is not clearly erroneous unless 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'" *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.3d 1182,

1185 (10th Cir. 1990) (quoting *LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987)).

The district court's factual finding that Higgins was domiciled in New Mexico at the time this action was filed in state court was not clearly erroneous. Although the law recognizes a presumption in favor of an established domicile over a newly acquired one, courts also allow a presumption of continuing residence on proof of residency. *Dyer*, 19 F.3d at 519. Regardless of any presumption, however, Sears had the ultimate burden of proving that diversity jurisdiction existed. *Id.* at 518; *see also Mid-Continent Pipe Line Co. v. Whiteley*, 116 F.2d 871, 873 (10th Cir. 1940). To prove a change of domicile, a party must show: 1) physical residence in the new location; and 2) intent to stay in the new location for an indefinite period of time. *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).

We find there is sufficient evidence in the record to support the district court's conclusion that Sears met its burden. First, Higgins was physically residing with his mother in New Mexico at the time the action was filed. Second, the district court determined that the evidence demonstrated Higgins' intent to change his domicile and to stay in New Mexico. On August 2, 1994, Higgins received a letter confirming his employment with American Home Furnishings in Albuquerque. Most of his personal belongings were moved from Tulsa to

Albuquerque on August 11, 1994. Higgins had a post office box and a separate phone installed at his mother's home in New Mexico. Finally, Higgins did not return to Tulsa until March 31, 1995 to help his wife move with him to Albuquerque. We find support for these facts in the record and therefore cannot find the district court's denial of Kramer's Motion to Remand was clearly erroneous.

Next, Kramer argues the district court erred when it granted Sears' motion for summary judgment. This court reviews a decision granting summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party. *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate only if there are no genuinely disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Irrespective of whether Kramer's action was filed within the applicable statute of limitations, we uphold the district court's judgment that, as a matter of law, Kramer did not allege conduct that was sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. Thus, we need not address the parties' statute of limitation arguments.

"Generally, to establish a prima facie case of [intentional infliction of emotional distress], plaintiff must demonstrate: (1) that the tortfeasor acted

intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe." *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law).

Under Oklahoma law, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not actionable. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). "Conduct which, though unreasonable, is neither 'beyond all possible bounds of decency' in the setting in which it occurred, nor is one that can be 'regarded as utterly intolerable in a civilized community,' falls short of having actionable quality. Hurt feelings do not make a cause of action." *Id.* (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).

The trial court is responsible for the initial determination whether a defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous under Oklahoma law. *Breeden v. League Services Corp.*, 575 P.2d 1374, 1377 (Okla. 1978). We agree with the district court that although Higgins' conduct may have been rude, insensitive, and even hostile, it "does not give rise to liability under a claim of intentional infliction of emotional distress." *See Daemi*, 931 F.2d at 1388 (holding that "ridicule and other abusive treatment . . . are not actionable under the [intentional infliction of emotional distress] tort");

*Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 433 (10th Cir. 1990) (finding that "[i]nsubordination, yelling, hostile reactions and the hurt feelings naturally accompanying such conduct do not give rise to a cause for intentional infliction of emotional distress").

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the ruling of the United States District Court for the Northern District of Oklahoma.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge