**WHEELWRIGHT TRUCKING CO., Plaintiff,**

v.

**DORSEY TRAILERS, INC., Defendant.**

**Liberty Mut. Ins. Co., Garnishee.**

**No. Civ.A. 01–D–440–N.**

United States District Court, M.D. Alabama, Northern Division.

Aug. 10, 2001.

Randall Stark Hynes, Alexander City, AL, Paul W. Brunson, Jr., Clayton, AL, W.

Percy Badham III, Robert W. Tapscott, Brannon J. Buck, Maynard Cooper & Gale, Birmingham, AL, for Wheelwright.

Collier H. Espy, Dothan, AL, for Dorsey Trailers.

Joseph T. Carpenter, Montgomery, AL, Brent J. Kaplan, Cele Ogawa, Robins Kaplan Miller & Ciresi, Atlanta, GA, for Liberty Mutual.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Plaintiff Wheelwright Trucking Company's[1] Motion To Remand, which was filed April 24, 2001 and amended May 4. Defendant Liberty Mutual Insurance Company[2] filed a Response May 30, and Wheelwright issued a Reply June 1. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion is due to be granted.

## I. FACTUAL BACKGROUND

Wheelwright filed suit against Dorsey Trailers and several other corporations in Alabama state court in November 1999. The underlying complaint concerned the sale of allegedly defective trailers. Wheelwright pled no insurance coverage issues and named none of Dorsey's insurers.

Liberty insures Dorsey. In October 2000, Liberty filed a declaratory judgment, which has been transferred to this District, to address the coverage issues created by Wheelwright's underlying complaint. Dorsey declared bankruptcy in December 2000, and Dorsey and Wheelwright then entered a $2.5 million consent judgment in exchange for Wheelwright's promise to execute only on Dorsey's insurers. Meanwhile, the bankruptcy court granted without comment Dorsey's motion to settle, and it lifted its stay in March 2001. The Barber County court entered an order reflecting this agreement. Wheelwright then filed a writ of garnishment against Liberty, which Liberty timely removed.

## II. STANDARD OF REVIEW

■ Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). The removing party has the burden of establishing federal jurisdiction, and doubts are resolved in favor of remand. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir. 1996); *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

## III. DISCUSSION

Wheelwright seeks to remand for two reasons. First, it argues that its postjudgment garnishment is an ancillary proceeding that cannot be removed independently of its underlying action in Alabama state court. Second, it argues that Wheelwright and Dorsey are both Alabama citizens and that, pursuant to 28 U.S.C. § 1332(c)(1), Liberty is also deemed to be an Alabama citizen.

■ A garnishment is a unique statutory remedy in which a creditor asks the court to order a third party, who is indebted to the debtor, to turn over to the creditor any of the debtor's property held by that third party. The removeability of a garnishment is an open question. The majority view supports removal, *see* 14B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 3721 at 308 (3d ed.1998); *Butler v. Polk,* 592 F.2d 1293, 1295–96 (5th Cir.1979) (involving Mississippi law), and the Eleventh Circuit in dicta has embraced this view. *See Webb v. Zu-*

---

**1.** "Plaintiff" or "Wheelwright."

**2.** "Defendant" or "Liberty."

*rich,* 200 F.3d 759, 760 (11th Cir.2000) (involving Alabama law). *Cf. Orrox Corp. v. Orr,* 364 So.2d 1170, 1172 (Ala.1978); *Olson v. Field Enter. Educ. Corp.,* 45 Ala. App. 438, 231 So.2d 763, 765 (1970). The court need not resolve this question, however, because even if garnishments may be removed, Liberty is a diversity-destroying in-state citizen for purposes of this civil action.

 In the absence of complete diversity, federal courts lack jurisdiction over any "direct action" brought by an aggrieved party seeking to collect a judgment from another party's insurer. The diversity statute is strictly construed, and under the modern trend, a "direct action" can include post-judgment garnishments brought by a judgment creditor against the judgment debtor's commercial insurer. *See Reko v. Creative Promo's, Inc.,* 70 F.Supp.2d 998, 1003–04 (D.Minn.1999); *Boston v. Titan Indem. Co.,* 34 F.Supp.2d 419, 424 (N.D.Miss.1999); *Sherman v. Pennsylvania Lumbermen's Mut. Ins. Co.,* 21 F.Supp.2d 543, 545 (D.Md.1998); *Prendergast v. Alliance Gen. Ins. Co.,* 921 F.Supp. 653, 655 (E.D.Mo.1996). *But see Davis v. Carey,* 149 F.Supp.2d 593, 600 (S.D.Ind.2001) (finding that such decisions "impermissibly expand the meaning of 'direct action' beyond that intended by Congress.")

 In this case, Wheelwright is the judgment creditor, Dorsey is the judgment debtor, and Liberty is the judgment debtor's insurer. Wheelwright has brought its writ of garnishment under Sections 6–6–370 *et seq.,* 27–23–1 and 27–23–2 of the Alabama Code. These are direct action statutes, for they allow Wheelwright to sue to collect from Dorsey's insurer, *i.e.* Liberty, without joining Dorsey in the same proceeding. *See Wiggins v. State Farm Fire & Cas. Co.,* 686 So.2d 218, 220 (Ala. 1996); *see also Fortson v. St. Paul Fire & Mar. Ins. Co.,* 751 F.2d 1157, 1159 (11th Cir.1985) (holding that direct actions can include claims when "the liability sought to be imposed could be imposed against the insured.")

Because Dorsey was not named in Wheelwright's garnishment action, Liberty is "deemed a citizen of the State of which the insured is a citizen, as well as any State by which the insurer has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Given that Wheelwright is an Alabama citizen, the question is: "Does Dorsey principally do business in Alabama?" The answer is: "Yes." Thus, by operation of law, Liberty is an Alabama citizen, and this case is due to be remanded.

Before proceeding, the court clears up an evidentiary dispute. Although the removing party normally has the burden of establishing subject matter jurisdiction, Liberty argues that, in this case, the burden of proving Dorsey's place of business should shift to Wheelwright. This is because Wheelwright alleged in the underlying state court action that Dorsey's principal place of business is Atlanta, Dorsey admitted this allegation, and Wheelwright has now changed its position by contending that Dorsey's locus is in Alabama.

Liberty basically urges the court to embrace *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514 (10th Cir.1994). *Dyer* was a declaratory judgment action in which a woman named Colley alleged in state court that Dyer resided in Wyoming. After Colley was confronted in federal court with the fact that plaintiff State Farm was an Illinois citizen, she tried to destroy diversity by arguing that defendant Dyer resided in Illinois, too. The Tenth Circuit held that Colley's prior allegation created the presumption that Dyer was from Wyoming and shifted the burden of proof onto Colley to show otherwise. *See id.* at 519.

The court declines to extend *Dyer* into this context. *Dyer* involved allegations about an individual's residence, not a company's principal place of business. Moreover, whatever may be said about the practical effect of the Declaratory Judgment Act, Congress intended for 28 U.S.C. § 1332(c)(1) to "prevent[ ] suit against an insurer in federal court when both the injured party and the insured were citizens of the same state," *Sherman*, 21 F.Supp.2d at 545, and "to reserve diversity jurisdiction for parties that are sufficiently foreign to have a legitimate fear of local prejudice." *Bel–Bel Int'l Corp. v. Community Bank of Homestead*, 162 F.3d 1101, 1107 (11th Cir.1998). Public and private utilitarian values dictate the placement of evidentiary burdens. *See Santosky v. Kramer*, 455 U.S. 745, 754–55, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The removing defendant must prove federal jurisdiction because society believes it is better for state courts to decide matters of state law than to have undue state-federal friction. *See Seroyer v. Pfizer, Inc.*, 991 F.Supp. 1308, 1312 (M.D.Ala.1997). The court recognizes that Dorsey has superior information about its corporate form, and Dorsey's admissions in state court are entitled to due weight. However, the court shall not relieve Liberty of its burden of proof. *See Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287, 293 (3d Cir.1998).

■ That said, the task at this juncture is to determine Dorsey's place of business by examining all of Dorsey's activities and pinpointing its "nerve center" or its primary "place of activities." *See Vareka Inv. v. American Inv. Prop., Inc.*, 724 F.2d 907, 910 (11th Cir.1984). Businesses that emphasize production and sales are likely to be linked to the state of production and physical operations. On the other hand, businesses that emphasize managerial and technical activities are likely to be linked to the state where their business decisions are made. Some relevant factors are: (1) the nature of the firm's activity, *i.e.*, whether it is "active or passive" and "labor-intensive or management-demanding"; (2) the number of locations where the firm operates; (3) the significance of the activity as it relates to the firm's purpose and the firm as a whole; (4) the amount of contact the firm has with the community; (5) the location of the firm's nerve center; and (6) the firm's structural rigidity and hierarchy. This is a pragmatic, functional inquiry. *See Mercury Fin. Corp. v. Aetna Cas. & Sur. Co.*, 900 F.Supp. 390, 393–94 (M.D.Ala.1995).

■ The court finds that Dorsey's principal place of business is Alabama. Dorsey is an active, labor-intensive firm that manufactures and markets flatbeds, trailers, dump trucks, and freight trucks. While Dorsey has some brownfields in Wisconsin and Pennsylvania[3] and some viable plants in Georgia and South Carolina, the bulk of Dorsey's physical operation is in Alabama. Its bankruptcy petition listed a total of 1,434 employees with claims for wages and commissions, and more than 70 percent of those employees live in Alabama. Thus, it is not surprising that Dorsey's recent 10–K filings stated that the Elba, Ala., manufacturing plant accounted for 80 percent of all new trailer production, and that the firm took a big hit when a flood halted production there for two weeks. Indeed, Dorsey has twice as much work in progress and owns more than twice as much equipment and machinery, five times more raw materials, and six times more finished goods in Alabama than in Georgia.

---

**3.** In late 1997, the NLRB sustained an unfair labor practice charge and ordered Dorsey to reinstate operations at its facility in Pennsylvania and reimburse its aggrieved workers. This decision is on appeal.

Liberty's competing evidence is unpersuasive. Liberty focuses mainly on the parties' jurisdictional allegations and admissions. Liberty also observes that: (1) Dorsey is incorporated in Delaware and its filings with the SEC and the secretaries of state in Georgia and Alabama identify Atlanta, Ga., as Dorsey's business address and mailing address; (2) Dorsey's executive offices are in leased property in Atlanta; (3) Liberty's accounts manager dealt with a Dorsey employee in Atlanta when Liberty obtained a continuing letter of credit; (4) Dorsey uses a network of independent dealers to market its products nationwide; (5) Dorsey's operational plants are in Alabama, Georgia, and South Carolina; and (6) the day before Wheelwright brought this garnishment, Dorsey filed a petition with the bankruptcy court seeking to sell its Alabama facility.[4]

Any corporate executive is more likely to identify with cosmopolitan Atlanta than with backwoods Elba. A swank, trendy address can help lure unsophisticated investors,[5] and a Georgia address gives its owner a better chance at avoiding suit in the Circuit Court of Barbour County, where, according to a tort reform advocate, "large punitive damages verdict[s]" are "the norm, rather than the exception." George L. Priest, *Punitive Damages Reform: The Case of Alabama*, 56 LA.L.REV. 825, 826 (1996). Be that as it may, our nation's dual court system operates under the principle of parity, which this court is not free to question. Jurisdiction cannot be created by estoppel. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Congress has plainly dictated that state law claims involving non-diverse defendants do not belong in federal court, and "courts have no authority to disregard such legislation out of some vague notion of expediency or fairness." *Ellis v. Huttig Bldg. Prods., Inc.*, 141 F.Supp.2d 1070, 1072 (M.D.Ala. 2001).

▪ The Alabama operations appear crucial to Dorsey's overall business plan and purpose. "[W]hen a corporation divides its operations among more than one state, but its activities in one of those states clearly exceed all of the activities in other states, the state with the largest volume of operations is the principal place of business." 13B WRIGHT, MILLER & COOPER, *supra* § 3625 at 628–29 (2d ed.1984). Liberty has not adequately shown that Dorsey's executives in Atlanta exercise significant control over Dorsey's production, sales, distribution, advertising, or public relations efforts. Nor does Dorsey have any ownership interest in any dealership. *Cf. Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959). Moreover, Dorsey's presence in Elba appears to be continuing even though it may be winding down its operations, and the court finds that such visible, sustained contacts can mitigate against alleged parochial prejudices. *See Mercury Finance*, 900 F.Supp. at 395 (citing *Messinger v. United Canso Oil & Gas*, 80 F.R.D. 730, 735 (D.Conn.1978)); *see also Timber Ridge Homeowners Ass'n v. Allstate Dev't Corp.*, 472 F.Supp. 86, 87–88 (E.D.Wis.1979) (place of business remains in state of operations while business is still viable). For these and other reasons, the court finds that Dorsey's principal place of business is Alabama and deems Liberty to be a citizen of Alabama. *See Anniston Soil Pipe Co. v. Central Foundry Co.*, 216 F.Supp. 473, 474 (N.D.Ala.1963), *aff'd*, 329 F.2d 313 (5th Cir.1964) (per curiam);[6] *Fel-*

---

4. Resp. at 16–20.

5. Dorsey is publicly traded on the Nasdaq.

6. The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

lers v. Atchison, Topeka & Santa Fe Ry., 330 F.Supp. 1334, 1338 (D.Kan.1971); Knee v. Chemical Leaman Tank Lines, Inc., 293 F.Supp. 1094, 1095 (E.D.Pa.1968); Foster v. Midland Valley R.R. Co., 245 F.Supp. 60, 61–62 (N.D.Okla.1965); Hodges v.. Georgia Kaolin Co., 207 F.Supp. 374, 375 (M.D.Ga.1962); see also Village Fair Shopping Ctr. v. Sam Broadhead Trust, 588 F.2d 431, 434 (5th Cir.1979).

The court will tax costs and expenses but not attorney's fees. Wheelwright's cryptic jurisdictional allegation invited Liberty's error, and courts should not encourage sloppiness in pleadings by compensating the attorneys who draft and file them. See Gardner v. Allstate Indem. Co., 147 F.Supp.2d 1257, 1263 (M.D.Ala.2001).

## IV. ORDER

It is CONSIDERED and ORDERED that this case be and the same is hereby REMANDED to the Circuit Court of Barbour County, pursuant to 28 U.S.C. § 1447(c). Reasonable costs and expenses other than attorney's fees are taxed to Defendant, for which let execution issue.

See Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).