**Justin C. FREEMAN, a Minor, by and Through His Mother and Adult Next Friend, Rebecca Freeman Plaintiff**

v.

**Joel B. WALLEY, and Unknown Defendants "A" Through "C" Defendant**

**No. CIV.A. 4:02CV430LN.**

United States District Court, S.D. Mississippi, Jackson Division, Eastern Division.

April 30, 2003.

Samuel S. McHard, Bryan, Nelson, Randolph and Weathers, Hattiesburg, Glenn L. White, Holmes & White, PLLC, Petal, for Plaintiff or Petitioner.

Victor John Franckiewicz, Jr., Scott Timothy Ellzey, Deutsch, Kerrigan & Stiles, LLP, Gulfport, for Defendant or Respondent.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on plaintiff Justin Freeman's motion to remand pursuant to 28 U.S.C. § 1447. Defendants Genesis Insurance Company (Genesis) and The Insurance Company of the State of Pennsylvania (ISOP) have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is not well taken and should be denied.

On February 20, 2002, Justin Freeman filed suit against Joel Walley in the Circuit Court of Wayne County, Mississippi, seeking to recover damages for injuries sustained in a single-vehicle accident while a passenger in a vehicle owned or leased by Dick Simon Trucking, Inc. and driven by Walley, an employee of Dick Simon Trucking. Walley failed to answer or otherwise respond to Freeman's complaint, and following a hearing to assess Freeman's damages, a default judgment was entered against Walley in the sum of $4,000,000. Subsequent to entry of the default judgment, Freeman sought issuance of writs of garnishment against Walley's insurers, Genesis and ISOP, in an effort to recover on the judgment. Walley was not joined as a party in the garnishment action. The insurers removed the garnishment action, contending that this court has jurisdiction based on diversity of citizenship since both garnishee insurers are citizens of states other than Mississippi and hence are of diverse citizenship from Walley, who is a Mississippi citizen.

Freeman has moved to remand, arguing that even if this garnishment proceeding is a separate civil action for removal purposes, removal of this action from state court is nonetheless improper under 28 U.S.C. § 1332(c)(1), which provides as follows:

> For purposes of ... section [1332] and section 1441 of this title-
>
> > (1) ... in any direct action against the insurer of a policy or contract of liability insurance ... to which the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen....

Freeman maintains that this garnishment proceeding, to which Walley has not been joined, is a "direct action" against the garnishee defendants, and that therefore, in accordance with § 1332(c)(1), these insurers are deemed to be residents of Mississippi, since their insured, Walley, is a Mississippi resident, as is plaintiff, as a consequence of which diversity of citizenship is lacking. The court has carefully considered the parties' arguments on the issue presented, and is convinced that this is not a "direct action" within the contemplation of § 1332(c)(1) and that this provision ultimately has no bearing on the court's jurisdictional analysis and conclusion.

As an initial matter, the court observes that although plaintiff appears to come short of conceding the issue, there is no question but that "a garnishment proceeding is a 'civil action' within the meaning of § 1441(a)," and is therefore subject to removal,[1] and that a garnishment action "exists separate and apart from the primary action that established the judgment

---

**1.** *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

debt which provides the foundation for the right of action against the garnishee." *Johnson v. Great American Insurance Company*, 213 F.Supp.2d 657, 660–61 (S.D.Miss.2001); *see also Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir.1979) (writs of garnishment "are in effect suits involving a new party litigating the existence of a new liability."). In other words, "even though, procedurally, a garnishment action may be filed under the same number as the case in which the judgment was obtained, it is, in effect, an entirely separate lawsuit" from the original action, and is removable as a distinct civil action under § 1441(a). *Johnson*, 213 F.Supp.2d at 661.

█ That brings the court to the question whether the writs of garnishment against the defendant insurers constitute "direct actions" against the carriers within the meaning of § 1332(c)(1). The Fifth Circuit has not specifically considered this issue, nor has this court, and a review of authorities on the question, which includes a case from the Northern District of Mississippi, reveals a lack of consensus. *See, e.g., Davis v. Carey*, 149 F.Supp.2d 593 (S.D.Ind.2001) (holding that a garnishment proceeding brought against insurer by injured third party is not direct action); *Wheelwright Trucking Co. v. Dorsey Trailers, Inc.*, 158 F.Supp.2d 1298 (M.D.Ala.2001) (holding that Alabama's direct action statute is broad enough to include post-judgment garnishments brought by judgment creditor against judgment debtor's commercial insurer); *Boston v. Titan Indemnity Co.*, 34 F.Supp.2d 419 (N.D.Miss.1999), *appeal dismissed*, 199 F.3d 437 (5th Cir.1999) (table) (finding that the Mississippi garnishment statute providing for the issuance of a writ of garnishment on a suggestion for garnishment filed by a judgment creditor "is the equivalent of a direct action statute 'which simply permits a suit against the insurer, without joining the insured' " to which § 1332(c)(1) applies).

As revealed by the statute's legislative history, at the time subsection (c)(1) was added to the diversity statute in 1964, two states, Louisiana and Wisconsin, had "direct action" statutes which allowed an injured party to sue a tortfeasor's insurer directly, without joining the local tortfeasor as a defendant. As a result of these statutes, the federal district courts in Louisiana were significantly burdened with litigation that would otherwise have been tort actions between only local residents which would have fallen within the exclusive jurisdiction of the state courts. S.Rep. No. 1308, 88th Cong., 2nd Sess.1964; 1964 U.S.C.C.A.N. 2778–2779, 1964 WL 4792. Congress's stated purpose in adding § 1332(c)(1) was to "eliminate under the diversity jurisdiction of the U.S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tortfeasor as a defendant." *Id.* at 2778.

Defendants submit that the meaning of the term "direct action" as used in this statute, must be considered in light of the original purpose for the 1964 amendment, and that when so viewed, it is apparent that a garnishment action against an insurer to collect on a judgment against its insured, although obviously an "action" against the insurer, is not the kind of "direct action" contemplated by the statute. Plaintiff, on the other hand, pointing to *Hernandez v. Travelers Insurance Co.*, 489 F.2d 721, 723 (5th Cir.1974), insists that the statute applies to "*all* direct actions" brought against an insurer to recover for injuries caused by its insured, regardless of the form in which the action is brought.

In *Hernandez*, an injured worker filed suit against his employer's workers' compensation carrier to recover for injuries

sustained on the job. Under the Texas Workers' Compensation Act, the employee's claim could not be brought against the employer, but rather was required to be brought against the carrier. The Fifth Circuit considered an argument by the workers' compensation carrier that since § 1332(c)(1) had been prompted by a specific situation, the statute should be "limited by the conditions which led to its adoption." *Id.* at 723. In other words, the carrier contended that "Congress intended that the amendment should apply only to direct actions brought under statutes similar to the Wisconsin and Louisiana statutes—that is, statutes providing for direct actions in motor vehicle or in tort cases." *Id.* The Fifth Circuit rejected this argument, stating, "Whatever may have been the specific evil prompting congressional action in 1964, Congress chose to remove all direct actions from the diversity jurisdiction." *Id.*

Plaintiff seizes on this language, "all direct actions," as well as a further statement by the *Hernandez* court that a "direct action statute ... simply permits a suit against the insurer, without joining the insured," as supportive of his position that *any* suit against the insurer in which the insured is not joined constitutes a "direct action." However, plaintiff fails to acknowledge the court's explanation in *Hernandez* as to the specific circumstances in which § 1332(c)(1) operates. First, the court remarked that the language of the statute was not limited "to motor vehicle cases, or to cases where the insured's liability is imposed by tort law," which were the "specific evils" that prompted Congress's addition of this provision in 1964. The statute could thus be read to extend to suits where the insured's liability is imposed on other bases, such as pursuant to an employer's worker's compensation laws. The *Hernandez* court further stated:

> "Congress intended that *wherever a party claiming to have suffered injuries or damage for which another is legally responsible is entitled to sue the other's liability insuror [sic] without joining the insured and without having first obtained a judgment against the insured,* the insurer shall be deemed a citizen of the State of which the insured is a citizen as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business, for the purposes of determining whether diversity jurisdiction exists."

*Id.* at 723 (emphasis added) (quoting *Vines v. United States Fidelity & Guar. Co.,* 267 F.Supp. 436 (E.D.Tenn.1967)). Thus, the court did not hold, as plaintiff contends, that a "direct action" under § 1332(c)(1) is any suit against a liability insurer in which the insured is not joined as a party. Rather, the court explicitly defined the "direct action" to which § 1332(c)(1) applies as an action in which a party who claims to have been injured or damaged by another is entitled to sue the other's liability insurer "without joining the insured and *without having first obtained a judgment against the insured'." Id.*[2] (emphasis added). Obviously, that is not the situation presented here.

In *Boston v. Titan Indemnity Co.,* 34 F.Supp.2d 419 (N.D.Miss.1999), upon which plaintiff also heavily relies, the court concluded that Mississippi's garnishment proceeding was "the equivalent of a direct action statute," because it "simply permits

---

**2.** Numerous courts have construed "direct action" under § 1332(c)(1) in precisely these terms. *See, e.g., Vargas v. California State Auto. Ass'n,* 788 F.Supp. 462 (D.Nev.1992); *Kelly v. State Farm Mut. Auto. Ins. Co.,* 764 F.Supp. 1337 (S.D.Iowa 1991); *Irvin v. Allstate,* 436 F.Supp. 575, 576 (W.D.Okla.1977); *Carvin v. Standard Accident Ins. Co.,* 253 F.Supp. 232 (E.D.Tenn.1966).

a suit against the insurer, without joining the insured." *Id.* at 423 (quoting *Hernandez* ). The court reasoned that Mississippi's statute "does in two steps what the Louisiana statute that lead to the change in § 1332(c)(1) did in one step, and provides to the suing plaintiff the same remedy that a direct action against the insurance company would have provided." *Id.* at 423–24 (quoting *Prendergast v. Alliance General Ins. Co.,* 921 F.Supp. 653 (E.D.Mo.1996)). The court's opinion in *Boston,* like the plaintiff's argument in this case, contains no indication that consideration was given to the *Hernandez* court's statement of its comprehension of what is meant by "direct action" under § 1332(c)(1), i.e., a suit by the tort victim against the insurer *where no judgment has first been obtained;* and this court is not persuaded that simply because a tort suit against the insured followed by a post-judgment garnishment proceeding (the two-step process) may have the same ultimate *effect* as a direct action (a one-step process) ought lead to the conclusion that § 1332(c)(1) applies equally to both. The two may be equivalent methods for achieving the same ultimate goal; but from the standpoint of jurisdictional considerations, relevant distinctions exist. That is to say, the contrast between the nature of a true "direct action" and the post-judgment garnishment situation presented here serves to further support this court's conclusion that what is here presented is not a "direct action" to which § 1332(c)(1) is addressed.

In this vein, as ISOP aptly observes, in a true direct action, in which the third party victim is entitled to sue the insurer directly without first securing a judgment against the tortfeasor, the insurer stands united with the insured in an adversarial posture against the injured plaintiff. In effect, it is a tort action between the victim and insurer that, but for the availability of a direct action, would be a suit between the victim and the insured. In contrast, in the situation where a tort action is first brought against the insured, once the plaintiff victim obtains a judgment against that insured, the plaintiff who seeks to collect on his judgment and the insured who is liable on that judgment, have a united interest in securing payment of the judgment from insurance proceeds.

Moreover, in a true direct action, the insurer is in the position of defending the merits of the victim plaintiff's claims against its insured, as it is litigating the insured's own liability for the plaintiff's damages, for which the insurer is or may be answerable. In contrast, in the garnishment setting, the insurer is no longer litigating the issue of its insured's liability; by the time a judgment has been secured, that issue has already been decided. In the garnishment action, the parties are "litigating the existence of a new liability," whether the insurer owes a debt to its insured. *Butler v. Polk,* 592 F.2d at 1295–96.

According to plaintiff's reasoning, any suit brought against an insurer to establish coverage or a right to recovery brought by a third party to the insurance contract would constitute a "direct action" under § 1332(c)(1) regardless of whether the state whose laws apply provides for a "direct action" in the traditional sense. It is questionable whether Mississippi law even allows for "direct actions" that might, if brought, come within the exception prescribed by § 1332(c)(1).[3] But this court is

---

**3.** Mississippi does not recognize a "direct action" in its original and pure form as a tort suit against an insurance carrier to establish the tortfeasor's liability to the plaintiff victim, and the insurer's liability therefor without the necessity of joining the insured. Mississippi Rule of Civil Procedure 57(c) does allow a plaintiff victim to sue a tortfeasor's liability carrier directly, via declaratory judgment, before securing a judgment against the insured, and without joining the insured, for the pur-

convinced that a garnishment suit is not a "direct action" within the meaning of § 1332(c)(1). Regardless of whether it may have proceeded against the insurer in the first instance, once a plaintiff sues his tortfeasor and obtains a judgment, as happened here, the judgment debtor has an interest in the policy if it may provide

pose of determining coverage where, but only where, the insurer has denied or indicated that it will deny coverage. However, in that scenario, the question of the insured's liability is not at issue. Indeed, as the comment to Rule 57 indicates, one reason for allowing this procedure is that "it may avoid unnecessary litigation when the policy is the only asset that might satisfy the injured party's claim, because a determination of non-coverage would avoid the need of trial of the claim against the insured." Rule 57 also permits a tort victim to sue the tortfeasor and carrier in the same action, so that "all of the issues growing out of an incident [may be] resolved in a single judgment." Cmt. 57(b). In that circumstance, the insurer is not permitted to be named as the real party in interest. *Jackson v. Daley*, 739 So.2d 1031, 1038 (Miss. 1999). And the Mississippi Supreme Court has recently made clear that in no event may a tort victim sue a tortfeasor's liability carrier that has admitted coverage. *See Poindexter v. Southern United Fire Ins. Co.*, 838 So.2d 964, 967 (Miss.2003) (holding that "[w]hile the amended Rule 57 permits an injured party to seek a declaratory judgment of coverage, it does not permit an injured party to join an insurance company that has admitted coverage"). Thus, while there are limited circumstances in Mississippi in which an insurer may be sued directly by one who has sustained injury for which the carrier's insured is alleged to be responsible, this is not a "direct action" in the usual sense. *See Poindexter*, 838 So.2d at 972–73 (Waller, J., concurring) (stating that "[u]nder our law, an injured third party *may not* maintain any direct action against a tortfeasor's insurance company," and that "[b]ecause there is no statutory authority allowing a third-party direct action against an insurance company, M.R.C.P. 57's right of filing a declaratory judgment action against an insurer is a narrow exception to the broader prohibition against an injured party maintaining a direct action against a tortfeasor's insurer"). The court doubts that the circumstances in which Mississippi allows

coverage for the judgment. The insurer is then sued in an effort to collect on the judgment because it holds an asset of the insured from which the judgment may be collected.[4] In the court's opinion, in that situation, the insurer is in no different posture from any other person or entity that holds assets of the judgment debtor.[5]

insurers to be sued by its insured's tort victims would qualify as a "direct action" under § 1332(c)(1), though this is an issue that need not be resolved since this is not the route chosen by this plaintiff.

**4.** The court notes that in his dissenting opinion in *State Farm Mutual Automobile Insurance Co. v. Eakins*, 748 So.2d 765, 771 (Miss. 1999) (McRae, J., dissenting), Justice McRae, though recognizing that the older post-judgment garnishment action remained a vehicle by which coverage issues could be resolved, undertook to strongly encourage the use of Rule 57 instead, since it was designed to obviate the need for such post-judgment actions. He stated:

Allowing an insured or third party beneficiary and the defendant to resolve insurance coverage questions prior to the trial on the merits is far more fair and economical to all parties than would be to require the trial on the merits and 3 or 4 years later resolve the questions of coverage and payment of a judgment. This, however, does not preclude having insurance coverage questions resolved in a garnishment proceeding. While both methods are permissible, it is preferred that coverage questions be disposed of initially.

The majority fails to address this important procedural issue even though resolution of coverage questions before trial should be strongly encouraged.

**5.** In *Boston*, the court was influenced in its decision by the fact that "[t]he defendant insurance company [in a garnishment proceeding] is not being sued for any action it took against the [plaintiff], but is simply being sued in an attempt to collect a judgment that has already been entered against its insured, a [Mississippi] citizen." 34 F.Supp.2d at 424. Yet that is always the case in garnishment actions against other types of entities, such as a bank which holds the judgment debtor's deposits, or an employer who owes wages to the judgment debtor, or a customer of the

Accordingly, the court concludes that § 1332(c)(1) does not apply, and that there is complete diversity of citizenship among the parties.

Therefore, it is ordered that plaintiff's motion to remand is denied.

judgment debtor who owes him for merchandise. In all of those situations, the existence of diversity would be determined by reference to the actual citizenship of the garnishee. Simply because the law has allowed that a person's liability insurer may first be sued directly to establish both its insured's, and then, if necessary, its own liability to a plaintiff victim is no reason to apply § 1332(c)(1) when this procedure is not utilized.